LUIS M. ORTIZ, Petitioner and Appellee, *v.* JUAN G. PALMER, SECRETARY-AUDITOR OF THE MUNICIPALITY OF SANTA ISABEL, ET AL., Respondents and Appellants. JORGE FINLAY, ETC., Petitioner and Appellee, *v.* SAME, Respondents and Appellants.

Nos. 8335 and 8336. Argued January 22, 1943.—Decided March 31, 1943.

*Felipe Colón Díaz* for appellants. *Rafael Hernández Matos* for appellee.

Mr. Justice De Jesús delivered the opinion of the court.

The Municipal Assembly of Santa Isabel in a special session held on January 24, 1938, passed Ordinance No. 42, which was approved by the mayor the next day and in which the following circumstances were stated:

*a.* That there then existed in the said municipality a malaria epidemic according to a communication from Dr. Abel de Juan, N.C.C.P.R., Chief of the Bureau of Epidemiology and Vital Statistics, to the mayor on January 22, 1938.

*b.* That the epidemic was of such a nature that it had become necessary to exhaust completely the existing appropriations in the 1937–38 budget for the different items for the Department of Charity, to wit: for the purchase of medicines, for the purchase of food for the sick, for the purchase of materials for curing people, and for the purchase of coffins for the poor.

*c.* That it was not possible to make transfers of appropriations made for other items, because some of them were almost exhausted and others were of great public necessity.

*d.* That the funds which are available to the municipality for the 1938–39 budget will be sufficient to cover its normal needs and also the debt authorized by said Ordinance.

*e.* That several commercial firms engaged in the sale of medicines, foods, materials for curing people and for coffins were willing to grant credit, for the term of a year, for any amount that the municipality might desire.

*f.* That it was the duty of the Municipal Assembly to solve this emergency existing in the municipality in a just and effective manner and within the provisions of law.

*g.* That the note or notes that will be issued as evidence of this debt will bear the signatures of the Mayor and the Secretary-Auditor of Santa Isabel.

By said ordinance, the mayor was empowered to incur a debt in the amount of $3,000 or any part thereof necessary for the above-stated purposes, from the time of the approval of the Ordinance, until June 30, 1938, such debt to be free of interest.

It was also provided that the said $3,000 indebtedness, authorized by the said ordinance, would be duly included in the ordinary budget for the fiscal year 1938–39 under the Chapter "Other Debts," so that that debt would be completely paid during the said economic year.

By §4 of said ordinance, it was provided that due to the existence of a state of emergency that said ordinance would take effect immediately upon its approval by the Mayor and the Executive Council of Puerto Rico.

The above ordinance was approved by the Executive Council on April 5, 1938 under the following conditions: (1) that the notes that were to be issued under the provisions of said Ordinance will not bear interest, and (2) that all the purchases were to be done through public bids in accordance with the provisions of §8 (1) in force, and §38 of the Municipal Law.

By virtue of said ordinance, Jorge Finlay, doing business under the name of "Santa Isabel Drug Co." on the dates comprised between April 14 and June 13, 1938, and in accordance with orders issued by the corresponding officer, sold medicines, filled prescriptions, sold materials for curing people, and other pharmaceutical products to said municipality, for the total amount of $729 but the amount of said purchases in a single occasion, never reached $600.

Also, from February until June 1938, Luis M. Ortiz provided groceries for the Municipal Hospital, up to an amount of $741.57, the following amounts showing the value of the merchandise provided for each month during that period: February, $154.39; March, $170.46; April, $166.52; May, $125.74; and June, $124.46.

On June 24, 1939, the municipality owed Jorge Finlay the amount of $729.09 and Luis M. Ortiz the amount of $741.57 as above indicated. They filed a petition for mandamus against Juan Palmer, Secretary-Auditor, and Pedro Meléndez Santiago, Treasurer and School Director of the Municipality of Santa Isabel, praying that they be ordered to issue corresponding checks in total payment of petitioners' respective bills. The petitioners further alleged that the Municipality of Santa Isabel, since January 1938 and at the time of the filing of the petitions for mandamus, had enough funds to pay petitioners' bills; that all the necessary documents and vouchers were presented and filed at the office of the municipal auditor; that all efforts by petitioners to collect their credits had been fruitless, notwithstanding the fact that special appropriations had been made for the payment of said debts, and that the petitioners did not have an appropriate and adequate remedy at law to compel the defendants to pay said debts.

In their answers the defendants accepted the amounts claimed and in answering Finlay's petition alleged that the total amount of the prescriptions filled by him from February to June 1938, amounted to $706.75, and the value of the materials for curing people provided by him to the hospital amounted to $1,222.34, but that since, in accordance with the conditions upon which said ordinance was approved by the Executive Council, the purchases were to be made by public bid as provided by §8(1) and §38 of the Municipal Law, all sales in excess of the amount of $600 had been made in violation of the powers granted by said law to the

officers of said municipality. They also alleged as a special defense that the writ of mandamus did not lie in this case because the petitioners had an adequate remedy at law through an action for the collection of money.

The court below issued in each case a peremptory writ of mandamus and against these two judgments the defendants have taken an appeal. Since the same questions are involved in both cases we have considered them jointly in this opinion.

■ Section 8 of the Municipal Law provides that all public works shall be done and all materials and supplies shall be purchased on call for bids when the cost thereof exceeds $1,000 in the municipalities of class 1, $600 in those of class 2, and $300 those of class 3. The Municipality of Santa Isabel being comprised in class 2, the judge in the court below predicated his judgment upon the fact that, as none of the different orders filled by the petitioners, individually, reached the amount of $600, the requisite of public bids did not apply thereto.

It is our opinion that the reasoning of the court below is erroneous. But this does not mean, however, that its judgments must also necessarily be erroneous. It is a well established legal principle both in the Civil Law and the Common Law that what the law forbids to be done directly cannot be done indirectly. We are of opinion that it was the purpose of the legislator that the value of all the effects purchased from a certain person during the fiscal year be added together. Any other interpretation would render useless the legal provision contained in §8, which in its pertinent part, reads as follows:

"That the powers hereby conferred on municipalities shall be exercised by them subject to the following special limitations: (1) All public works shall be done and all material and supplies shall be purchased on call for bids when the cost thereof exceeds one thousand (1,000) dollars in municipalities of Class I; six hundred (600) dollars in those of Class II; and three hundred (300) dollars

in those of Class III; and when an emergency exists and the work is of such nature that it can not be delayed pending public-auction proceedings, the mayor may call a special meeting of the municipal assembly for the purpose, and said assembly shall have power to declare the urgency of the work or the need of the material, and to direct that it be done by administration.''

The above-transcribed section contains one exception as to the requisite of the call for bids, even in case that the amount of the purchase of materials and supplies or the cost of the public work exceeds the amounts fixed in said section. That exception applies when an emergency exists, at which time it is presumed that the work to be done or the purchase of the services to be had is so urgent that the delay that the process of a bid would entail cannot be allowed. For those situations, the above-quoted section provides that the mayor will call a special session of the Municipal Assembly, and it grants the Municipal Assembly the power to declare the existence of an emergency and the urgency of the work or the need of the materials or the services, the Municipal Assembly being empowered in such a situation to provide that the work may be done by administration or the services may be acquired without the previous requisite of a call for bids, irrespective of whether the value of the materials or the services exceeds the amounts fixed by §8, *supra*.

Interpreting a statute similar to ours, the Supreme Court of California, in the case of *Los Angeles Dredging Co.* v. *Long Beach* (1930) 71 A.L.R. 161, 168, cites with approval the following doctrine of the Court of Appeals of New York, stated in the case of *Harlem Gaslight Co.* v. *Mayor, etc., of New York,* 33 N.Y. 309, 329:

''Competitive offers or bids have no other object but to insure economy and exclude favoritism and corruption in the furnishing of labor, services, property and materials for the uses of the city. This was the purpose and the only purpose of the framers of the statutes. . . . They are not to have such a construction as to defeat

this purpose, to impede the usual and regular progress of the public business, or to deprive the inhabitants, even temporarily, of those things necessary and indispensable to their subsistence, their health, or the security and protection of their persons or property. Contingencies may arise when services, materials and property, above the prescribed value, may be immediately needed, and where competitive offers and written contracts would be unserviceable or impossible. In such a case the statutes would not apply, because such application could not have been intended.''

The power to declare the existence of an emergency was granted exclusively to the Municipal Assembly. Once this declaration is made, the existence of the emergency is presumed and the one denying its existence will have the burden of proving it. See *Los Angeles Dredging Co.* v. *Long Beach, supra,* p. 171, and the monograph on this matter which is found at 71 A.L.R. 173–9.

It cannot be argued that the petitioners do not have a right to collect their bills because the condition imposed by the Executive Council, to the effect that the purchases were to be made through public bids, had not been complied with, since the Executive Council lacked the power to impose such condition, this power not having been granted to it and if it exercised it then this would deprive the Municipal Assembly of the power expressly granted to it by law. It is true that the ordinance was subject to approval by the Executive Council, but the function of this latter body was limited to the determination of whether the loan was comprised within the constitutional limit, so that the municipality could contract it and also to determine its desirability and the manner and conditions of payment. See to this effect, §48 of the Municipal Law. It is evident that if the municipality had available funds to take care of the emergency, once its existence was declared by the Municipal Assembly, it could have bought said supplies for cash, even if their cost exceeds $600. In such a case there would have been no need

662

of submitting the ordinance to the approval of the Executive Council.

In the instant case the defendants have not denied the existence of the emergency and they cannot, therefor, attack the debt because no bid was called for.

 There is no basis for the appellants' contention that mandamus is not the proper remedy in this case. Section 83 of the Municipal Law provides that the district courts will have jurisdiction upon petition of an injured party to compel through the issuance of a writ of mandamus the fulfillment of the ministerial duties of municipal officers. As the duty imposed upon the defendants to pay the bills claimed by the plaintiffs is a ministerial duty, it is manifest that the writ of mandamus will lie in accordance with the above-mentioned section.

For the aforesaid reasons, the appeals should be dismissed and the judgment affirmed.